# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES DIVISION OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, <br><br> Petitioner, <br><br> v. <br><br> KEOLIS COMMUTER SERVICES, LLC, <br><br> Respondent. | CIVIL ACTION NO: |

## PETITION TO ENFORCE AWARD AND ORDER OF THE NATIONAL RAILROAD ADJUSTMENT BOARD

Under the Railway Labor Act, 45 U.S.C. § 153, an individual railroad and a union may establish a special board of adjustment to resolve minor disputes regarding grievances. Here, Petitioner Brotherhood of Maintenance of Way Employes Division of the International Brotherhood of Teamsters ("BMWED") submitted a dispute with Keolis Commuter Services, LLC ("Keolis") to a Special Adjustment Board. The dispute concerned Keolis's breach of an agreement with the BMWED to extend matching wage increases to the BMWED when it increased wages in agreements with other unions. Here, the Special Adjustment Board issued a multi-part ruling. In substance, it required Keolis to (1) provide information to determine whether (in total economic terms) it had given other unions a better deal when applying the wage increase, and (2) negotiate with BMWED regarding the wage increase. Unfortunately, Keolis did not follow the ruling. Instead, Keolis declined to provide the necessary information, unilaterally declared that it would not allow a wage increase unless the BMWED gave up other benefits, and made a "take-it-or-leave-it" offer. The BMWED therefore files this Petition to force Keolis into compliance.

## JURISDICTION

1. This Court has jurisdiction over this action pursuant to 45 U.S.C. § 153 First (p) and by 28 U.S.C. § 1331 and § 1337.

## VENUE

2. Venue is proper in this Court under 45 U.S.C. § 153 First (p) because the Respondent, Keolis, operates in this judicial district.

## PARTIES

3. Petitioner BMWED is a national labor organization and the duly authorized bargaining representative under the RLA for persons employed by Keolis. BMWED is a "representative" as defined in 45 U.S.C. § 151 Sixth. Its principal place of business is in Novi, Michigan.

4. Respondent Keolis is engaged in the transportation of passengers and property by railroad in interstate commerce and the operation of rail equipment and facilities. Keolis operates and maintains the Massachusetts Bay Transportation Authority's commuter rail system. It is a "carrier" within the meaning of 45 U.S.C. § 151 First. Its principal place of business is in Boston, Massachusetts.

## STATEMENT OF FACTS

5. The BMWED and Keolis are parties to a collective bargaining agreement ("CBA") in effect from July 1, 2016 through June 30, 2022.

6. The BMWED and Keolis are parties to a Memorandum of Agreement ("MOA"), dated September 16, 2019. That MOA contains a "Me-Too" Letter of Understanding, which provides that:

> In the event the current round of negotiations between Keolis Commuter Services (KCS) and the other KCS bargaining units results in compensation, health or retirement benefits or additional economic value that is greater than

      the compensation, health or retirement benefits or economic value negotiated by Keolis and the BMWED for the contract terms commencing July 1, 2016 through June 30, 2022, Keolis will extend the applicable greater compensation, health or retirement benefits and/or economic value to the members of the BMWED.

The MOA is attached as **Exhibit A**.

7. Between December 2019 and March 2020, Keolis entered into a new agreement with the American Train Dispatchers Association ("ATDA"), the International Brotherhood of Electrical Workers ("IBEW"), and the Brotherhood of Railroad Signalmen ("BRS"). This new agreement with the ATDA, IBEW, and BRS contained higher general wage increases effective July 1, 2020, July 1, 2021, and July 1, 2022 than the general wage increases that Keolis had negotiated with the BMWED.

8. On June 23, 2020, the BMWED accordingly filed a claim with Keolis. The BMWED alleged that Keolis had violated the Me-Too provision of that MOA when Keolis failed to implement equivalent wage increases for employees covered by the MOA.

9. Keolis and the BMWED were unable to resolve this dispute informally.

10. On March 22, 2021, the parties therefore entered into an agreement establishing a Special Board of Adjustment for a determination in final and binding arbitration.

11. On June 30, 2021, a hearing was held at Keolis's office in Boston, Massachusetts before the Special Board of Adjustment No. 1197 ("Board"). The Board was composed of Michael Capone, Chair and Neutral Member; Peter E. Kennedy, Employee Member; and MaryAnn Lemon, Carrier Member. Both sides were afforded a full opportunity to present their respective positions.

12. On October 18, 2021, the Board issued Award No. 1 (the "Award"). A copy of the Award is attached as **Exhibit B**.

13. In the Award, the Board found that Keolis violated the CBA when it failed to "extend" to BMWED the general wage increase provided in the subsequent agreements to the other unions. However, the Board also found that the Me-Too provision was not self-executing.

14. In the Award, the Board found that the Me-Too provision required the following:[1]

> 1. The Carrier shall "extend", and therefore, provide the Organization with the opportunity to review the option of accepting the general wage increase provided in the subsequent agreements in a manner that addresses the cost of the increased wages as it relates to the "economic value negotiated by Keolis and the BMWED for the contract terms commencing July 1, 2016 through June 30, 2022".
>
> 2. Upon such discussion, the Organization will have the opportunity to accept the general wage increase within the economic value ascribed to the existing MOA.
>
> 3. Where upon the discussions between the parties it is established that the subsequent agreements contained a greater "economic value negotiated by Keolis and the BMWED for the contract terms commencing July 1, 2016 through June 30, 2022", the Claimants shall be entitled to a general wage increase equal to the additional value, if any, of a subsequent agreement.

15. The Board also found as follows:

In summary, we have reviewed and carefully weighed all the arguments made in the record but have found that it is not necessary to address each facet in these Findings. We find that the Carrier must 'extend' to the Organization an opportunity to negotiate a general wage increase contingent upon a review of the economic value of the MOA when compared to a subsequent agreement as described in the Findings and Award.

16. Keolis was ordered to make the Award effective on or before 30 days following the date the Award was transmitted to the parties.

17. The Carrier has refused, and is continuing to refuse, to abide by the Board's Award.

18. On January 31, 2022, Keolis did not extend an unconditional offer to BMWED to review the option of accepting the most recent ATDA general wage adjustment. Instead, Keolis stated that it would only provide that option if BMWED members paid back other financial

---

[1] Keolis is the "Carrier." The BMWED is the "Organization."

benefits they had received under the MOA. This would include paying back a clothing stipend, increased per diem, and the 2022 MLK holiday. A copy of Keolis's proposal is attached as **Exhibit C**. This proposal did not comply with the Board's directives.

19. On April 15, 2022, the BMWED and Keolis met to discuss the proposal, but did not reach agreement.

20. During the April 15, 2022 meeting, Keolis did not provide information sufficient to establish whether or not the MOA negotiated between Keolis and BMWED had a greater economic value than the subsequent agreements with other unions. Thus, in both its January 31 letter and in the April 15 meeting, Keolis failed to comply with the Board's directive to provide this information. Without this information, the BMWED could not make an appropriately informed decision regarding the possible wage increase.

21. On May 4, 2022, Keolis declared that it considered BMWED to have rejected its proposal. Keolis also stated that it considered the matter to be closed and the Award to have been fully satisfied. A copy of Keolis's letter is attached as **Exhibit D**.

22. As noted above, in the Award, The Board found, in relevant part, that "the Carrier must 'extend' to the Organization ***an opportunity to negotiate*** a general wage increase contingent upon a review of the economic value of the MOA when compared to a subsequent agreement as described in the Findings and Award." (emphasis added).

23. Keolis did not comply with these directives. First, by proposing only a "take-it-or-leave-it offer," Keolis did not "negotiate" with the BMWED as the Board's Award required. Second, it failed to compare the economic value of subsequent agreements to the economic value of the MOA – and failed to provide the BMWED sufficient information to make that comparison. .

## CLAIM

24. The BMWED incorporates the preceding allegations as if fully set forth herein.

25. 45 U.S.C. § 153 First (p) provides that if a carrier does not comply with an order of the Board, the petitioner may file a petition to enforce the order in a District Court of the United States. In such a proceeding,

> [t]he district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board: Provided, however, That such order may not be set aside except for failure of the division to comply with the requirements of this Act, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

26. 45 U.S.C. § 153 Second provides that awards of special boards of adjustment "shall be enforceable by proceedings in the United States district courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board."

27. The Award of the Special Board of Adjustment No. 1197 complies with the requirements of the Railway Labor Act, 45 U.S.C. § 151 *et seq*.

28. The Board's Award was not tainted by fraud or corruption, and it is final and binding on the parties.

29. Accordingly, pursuant to 45 U.S.C. § 153 First (p) and § 153 Second, BMWED is entitled to have the Board's Award enforced by this Court.

## PRAYER FOR RELIEF

WHEREFORE, the Union respectfully requests that this Court:

A. Enter an order in favor of the BMWED enforcing Award No. 1 Special Board of Adjustment No. 1197 dated October 18, 2021.

B. Order that Keolis Commuter Services, LLC engage in discussions with the BMWED and provide sufficient information to determine the total economic value of the MOA as compared to the total economic value of the subsequent agreements between Keolis and other unions, as required by the Award;

C. Order Keolis Commuter Services, LLC to negotiate with the BMWED regarding a general wage increase, as required by the Award;

D. Order Keolis Commuter Services, LLC to pay the BMWED for its costs and reasonable attorney's fees in this matter per 45 U.S.C. § 153 First (p); and

E. Issue any other relief this Court deems just and proper.

Respectfully submitted,

*/s/ Anthony Orlandi*
Anthony Orlandi
HERZFELD, SUETHOLZ, GASTEL, LENISKI & WALL, PLLC
223 Rosa L. Parks Avenue
Suite 300
Nashville, TN 37203
tony@hsglawgroup.com

Rachel Rekowski (*pro hac vice* admission pending)
HERZFELD, SUETHOLZ, GASTEL, LENISKI & WALL, PLLC
425 Walnut Street
Suite 2315
Cincinnati, OH 45202
rachel@hsglawgroup.com

***Counsel for Petitioner, Brotherhood of Maintenance of Way Employes Division of The International Brotherhood of Teamsters***

## **CERTIFICATE OF SERVICE**

  I hereby certify that the foregoing Petition to Enforce Award and Order of the National Railroad Adjustment Board was filed this the 16th day of March 2023 using the Court's ECF electronic filing system.

             */s/ Anthony Orlandi*
             Anthony Orlandi